IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| HUGH D. WYATT | : | NO. 17-599-3 |

## <u>ORDER-MEMORANDUM</u>

**AND NOW**, this 5th day of November, 2025, upon consideration of Defendant Hugh Wyatt's pro se Motion for Early Termination of Supervised Release (Docket No. 225), the Government's opposition to that Motion, and input from the United States Probation Office, **IT IS HEREBY ORDERED** that the Motion is **DENIED**. However, Probation's recommendation that Defendant be moved from the Low/Moderate Risk caseload to the Low Risk caseload is **APPROVED**.

On November 16, 2018, Defendant pled guilty pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) (a "C-plea agreement") to Counts 7, 8, and 9 of a Superseding Indictment, each of which charged him with distribution of fentanyl, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. Among the provisions in the guilty plea agreement is a waiver of Defendant's rights to appeal or bring a collateral challenge to his conviction or sentence. On March 26, 2019, this Court sentenced Defendant to a 90-month term of imprisonment, three years of supervised release, and a $300 special assessment. Supervised release commenced on April 21, 2023, and is thus due to expire in approximately six months, on April 20, 2026.

Defendant's supervised release thus far has been without incident. The probation office has classified him as a low/moderate risk, which requires only bi-monthly visits with his probation officer. According to Defendant, he has maintained steady employment with the Southeastern

Pennsylvania Transportation Authority ("SEPTA"), has remained arrest-free and maintained a "prosocial" lifestyle, and has demonstrated a commitment to rehabilitation and reintegration into the community.  (Def.'s Mem. at 1.)  The probation office reports that Defendant has maintained a stable residence, has remained employed, has paid his special assessment in full, has had no new arrests, and has consistently tested negative for drug and alcohol use.

Based on his positive adjustment to supervised release, Defendant has moved for early termination of his supervised release pursuant to 18 U.S.C. § 3583(e), which grants us discretion to terminate a term of supervised release if we are "satisfied that such action is warranted by the conduct of the defendant . . . and the interest of justice," 18 U.S.C. § 3583(e)(1).  In exercising our discretion, we consider certain factors laid out in 18 U.S.C. § 3553(a), including:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

United States v. Melvin, 978 F.3d 49, 52 (3d Cir. 2020) (quoting United States v. Davies, 746 F. App'x 86, 88-89 (3d Cir. 2018)).  At the same time, we "are not required to make specific findings of fact with respect to each of these factors; rather, 'a statement that [we have] considered the statutory factors is sufficient.'"  Id. at 52-53 (quoting United States v. Gammarano, 321 F.3d 311, 315-16 (2d Cir. 2003)).  Moreover, the United States Court of Appeals for the Third Circuit has stated that "[g]enerally, early termination of supervised release under § 3583(e)(1) will be proper only when the [court] is satisfied that new or unforeseen circumstances warrant it."  Id. at 53 (first

2

alteration in original) (internal quotations omitted). The defendant always bears "the burden of establishing that early termination of his supervised release is merited." United States v. Allston, Crim. A. No. 99-409, 2021 WL 4262315, at *2 (E.D. Pa. Sept. 20, 2021) (citing United States v. McDowell, 888 F.2d 285, 291 (3d Cir. 1989)).

The Government opposes early termination of Defendant's supervised release on two grounds. First, it contends that Defendant waived the right to seek early termination in his guilty plea agreement. Second, it argues that the § 3553(a) factors do not support early termination. The United States Probation Office also opposes early termination.

A. Waiver

Defendant's Guilty Plea Agreement contains the following waiver:

> If the Court accepts the recommendation of the parties and imposes the sentence [set forth in the] agreement, the government agrees that it will not file any appeal of the sentence in this case, and the defendant agrees that he **voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution**, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes. However, the defendant retains the right to file a claim, if otherwise allowed by law, that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance.

(Guilty Plea Agreement, Attach. A to Gov't Mem., ¶ 13 (emphasis added).)

In support of its argument that Defendant waived his right to file his Motion for early termination of supervised release, the Government points to this waiver and the decision of the United States Court of Appeals for the Third Circuit in United States v. Damon, 933 F.3d 269 (3d Cir. 2019). In Damon, the defendant entered into a guilty plea agreement in which he waived the right to file "any appeal, any collateral attack, **or any other writ or motion**, . . . which challenges

3

the sentence imposed by the sentencing court," provided that that sentence was "within or below" the advisory Guideline range.  Id. at 271 (emphasis added).  In considering whether this waiver applied to motions for early termination of supervised release, the Third Circuit first noted its longstanding enforcement of waivers in guilty plea agreements and explained that such plea agreements are "analyzed under contract law standards."  Id. at 272-73 (citations omitted).  It also found both that the term "sentence" in the waiver unambiguously includes a defendant's term of supervised release and that the defendant's motion for early termination of supervised release amounted to a "challenge" to that sentence.  Id. at 273-74.  It therefore held that the defendant's motion for early termination of his supervised release pursuant to 18 U.S.C. § 3583(e) fell within the scope of his waiver.  Id. at 275.

        The Government now contends that the logic of Damon similarly bars Defendant from seeking early termination of his supervised release.  However, it does not acknowledge that the language of Defendant's waiver is narrower than that in Damon, most critically because Defendant, unlike Damon, did not waive his right to file "any other writ or motion, . . . which challenges the sentence imposed."  Damon, 933 F.3d at 271.  We thus conclude that Damon does not control the precise issue presented here, which is only whether Defendant's more limited waiver of the right to appeal or collaterally attack his sentence bars him from filing his present Motion.

        We addressed the applicability of an almost identical appellate and collateral attack waiver in United States v. Crews, another case in which the defendant filed a motion for early termination of supervised release.  Crim. A. No. 10-663-5, 2020 WL 6581430 (E.D. Pa. Nov. 10, 2020).  We concluded in Crews that the defendant had not waived his right to bring the motion.  Id. at *2.  As we explained:

> While [defendant] waived the right to appeal and collaterally attack his sentence in his Guilty Plea Agreement, he did not waive the right to file any other sort of motion with respect to his sentence. The instant motion does not constitute an appeal of [defendant's] sentence, request reconsideration of his sentence, or ask us to reverse or vacate any part of his sentence. We therefore conclude that the instant Motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e) does not constitute an appeal or collateral attack of [defendant's] sentence, which would be covered by the appellate waiver and, accordingly, we conclude that [defendant] did not waive his right to bring the instant Motion in his Guilty Plea Agreement.

Id. at *2.  Other "[c]ourts distinguishing Damon have [similarly] held that motions for early termination of supervised release are neither appeals nor collateral attacks of the underlying sentence" and thus, are not barred by appellate and collateral attack waivers.  United States v. Tarboro, Crim. A. No. 08-323-01, 2023 WL 3821812, at *2 (E.D. Pa. June 5, 2023); see United States v. Mabry, 528 F. Supp. 3d 349, 353-56 (E.D. Pa. 2021); United States v. Fluellen, Crim. A. No. 09-497-1, 2022 WL 309159, at *6 (E.D. Pa. Feb. 2, 2022); United States v. Pearson, Crim. A. No. 04-433, 2024 WL 1936226, at *2 (E.D. Pa. May 1, 2024).  But see United States v. Wadlington, Crim. A. No. 12-457-2, 2022 WL 206173, at *1 (E.D. Pa. Jan. 24, 2022) (concluding that identical waiver barred motion for early termination); United States v. Ball, Crim. A. No. 05-56-10, 2021 WL 51461, at *1-2 (E.D. Pa. Jan. 6, 2021).  In accordance with our prior decision in Crews and the decisions of the other courts reaching the same conclusion, and in the absence of any argument from the Government as to why the precise limited waiver at issue here prohibits Defendant's Motion, we conclude that Defendant's appellate and collateral attack waiver does not bar his Motion for Early Termination of Supervised Release.

B.  § 3553(a) Factors

The Government argues in the alternative that Defendant has not met his burden of proving that the relevant § 3553(a) factors support early termination.  As noted above, in seeking early termination, Defendant points to his steady employment with SEPTA, his recent compliance with

both the law and the terms of his supervised release, and his "prosocial lifestyle, demonstrating rehabilitation and responsibility." (Def.'s Mem. at 2.) He ultimately argues that his "exemplary compliance [with the terms of supervised release], demonstrated rehabilitation, and the absence of any public safety concerns" support early termination. (Def.'s Mot. at 1.)

However, upon consideration of the § 3553(a) factors, we are not convinced that the interests of justice support early termination. We commend Defendant for his positive adjustment to supervision and reintegration into his community, but compliance with the terms of supervised release is merely what is expected during supervision and does not alone support a bid for early termination. Defendant's crimes in this case involved the distribution of fentanyl, a particularly potent opioid, which has caused many overdose deaths in Philadelphia. Specifically, on three different dates in June of 2017, he knowingly facilitated the sale of a total of 36 grams of fentanyl disguised as heroin to undercover federal agents. (11/16/18 Hr'g Tr., Docket No. 229, at 14-17.) At sentencing, Defendant faced an advisory Guideline range of 188 to 235 months' imprisonment because he had four prior felony convictions for possession with intent to distribute controlled substances and thus qualified as a Career Offender. His 90-month sentence pursuant to his C-plea agreement was a significant reduction from his advisory Guideline range.

The nature and circumstances of Defendant's fentanyl crimes, his prior history of drug crimes, and the comparative leniency of his sentence of imprisonment all weigh against early termination. The probation office also opposes early termination, stating, inter alia, that Defendant's classification as a Career Offender makes Defendant ineligible for early termination under local policy. Moreover, Defendant has presented no new or unforeseen circumstances that would provide a rationale for cutting short his supervisory term. Indeed, his positive record under minimal supervision signals to us that he is thriving under supervision and leads us to conclude

6

that maintaining supervision for the limited time remaining will encourage his continued progress without being punitive.  We also believe that the existing sentence remains appropriate to avoid sentencing disparities with other individuals who have been found guilty of similar conduct, all of whom necessarily faced a three-year mandatory minimum term of supervised release.  See 21 U.S.C. § 841(b)(1)(C).

For all of the foregoing reasons, we deny Defendant's Motion for Early Termination of Supervised Release, rejecting the Government's argument that Defendant has waived his right to file the Motion, but exercising our discretion, upon consideration of the relevant § 3553(a) factors, to conclude that the Motion fails on its merits.  At the same time, the probation office has advised us that it recommends moving Defendant from the Low/Moderate Supervision caseload to the Low Risk caseload for the remainder of Defendant's term of supervision to align with Defendant's reduced risk to reoffend, and we approve that recommendation.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.

7